## Isaac Goddard & others *vs.* John Barnard.

In an action for the breach of a contract in writing, by which the defendant agreed to cover the roof of the plaintiff's building, and to warrant the same to stand well and resist the water and make a tight roof for the term of five years, and in default thereof to make the same satisfactory to the plaintiff, the plaintiff can recover no damages for injury to the interior of his building or to articles stored there, caused by water leaking through the roof constructed by the defendant; but only the cost of having the roof put into a satisfactory condition.

Action of contract upon this agreement in writing: "For and in consideration of six hundred and thirty eight $\frac{77}{100}$ dollars to me paid for covering two roofs for Goddard, Rice & Co. with slate and composition, I do hereby agree to warrant the same to stand well and resist the water so that it shall make a tight roof for the term of five years from this date, and in default therefor I promise to make the same to them or their successors satisfactory, not happening through any fault of Goddard, Rice & Co. or their successors. Worcester, November 8th 1856.

"John Barnard."

Trial in the superior court, before *Vose,* J., who signed the following bill of exceptions :

"The plaintiffs offered evidence that the defendant constructed the roofs referred to in November 1856; that early in the spring of 1857 the roofs began to leak, and that a considerable quantity of water passed through the same at the time of every heavy rain until November 1859, six months after the date of the writ, when the plaintiffs removed the roofs and constructed others; that the defendant was notified of such leaks from time to time as they occurred, and went many times upon the roofs and endeavored to repair the same; and that it was known to both parties at the time of the contract that the substance of which the roofs were in part composed was a new invention which had been little tried or used; and no bad faith or negligence in the original construction of the roof was imputed to the defendant.

"The plaintiffs further offered evidence tending to show that they were largely engaged in business, in the buildings covered

by such roofs, as manufacturers of machinery; that they had valuable machinery in operation therein, and valuable machinery stored there for sale, and that these facts were known to the defendant when he made the contract and constructed the roofs; that said machinery was injured by rain in consequence of such leaks, and the plaintiffs' workmen at various times driven from their work by the same, and their business seriously interrupted. This evidence was admitted, the defendant objecting.

" The defendant requested the court to instruct the jury that the plaintiffs could only recover in damages the difference in value between the roof actually on the building and such a roof as the contract required; and that the plaintiffs could not recover anything beyond the fair value of such a roof as the defendant had engaged to provide.

" The court declined so to instruct the jury; but instructed them, that the defendant had a right, under this contract, to make tight and remedy defects in the roof as originally constructed, by any mode which did not materially change the character and durability and safety of the roof contracted for; that if they were satisfied that the roof as originally constructed did not answer the requirements of the guaranty, and could not be made to by any such mode of repairing, which ought to be reasonably satisfactory to the plaintiffs, and that the roof was so defective that the leaks caused a material and substantial annoyance and injury to the plaintiffs and their property in the prosecution of their business, they had a right to remove the same; that in such case they might recover the difference between the price or value of the roof actually constructed and that contracted for; that the plaintiffs might further recover for any injury to their building or their fixed machinery, or machinery stored for sale, caused by leaks, and for the interruption of their business and loss of time of their men occasioned thereby.

" The jury found a verdict for the plaintiffs for $684.48. They were directed by the presiding judge to assess separately the different items of damage, and returned that they assessed for the plaintiffs damage sustained by the interruption of their business, $109; for the injury to the building, $30; and for the

injury to the machinery and personal property, $75.87.    To the foregoing rulings the defendant excepts."

*G. F. Hoar*, for the defendant.

*P. C. Bacon*, for the plaintiffs, cited *Snow* v. *Ware*, 13 Met. 50; *Hayward* v. *Leonard*, 7 Pick. 181; *Gleason* v. *Smith*, 9 Cush. 484; *Bartlett* v. *Blanchard*, 13 Gray, 430; *Dewint* v. *Wiltse*, 9 Wend. 325; *Blanchard* v. *Ely*, 21 Wend. 342; *Freeman* v. *Clute*, 3 Barb. 424; Sedgwick on Damages, (2d ed.) 90.

CHAPMAN, J.    The contract on which this action is brought is very general in its terms, and they are expressed loosely and inaccurately.    But it contains a provision that must regulate the measure of damages for a breach of it.    The roof, having been made, is warranted to stand well and resist the water, so that it shall make a tight roof, for the term of five years, and in default thereof, the defendant promises to make it satisfactory to the plaintiffs.    Upon a breach of this agreement the plaintiffs were entitled to have a satisfactory roof made at the expense of the defendant, or to recover the amount that such a roof would cost.    This is all the damage that the language of the contract contemplates.    The evidence shows that the roof was composed of a newly invented substance, that had not been thoroughly tested, and that it was regarded by both parties as an experiment.    This circumstance, and the amount paid for the roof, tend to confirm the idea that the defendant did not intend to guaranty the plaintiff against the more remote damages that they might be exposed to in the prosecution of their business, and injury done to articles that might be stored in the building, by reason of defects in the roof.

As a general rule of damages for the breach of special contracts, that of the civil law is safe and just.    " In general the parties are deemed to have contemplated only the damages and interest which the creditor might suffer from the nonperformance of the obligation in respect to the particular thing which is the object of it, and not such as may have been incidentally occasioned thereby."    1 Pothier on Obligations, pt. 1, c. 2, art. 3.    The cases of *Hadley* v. *Baxendale*, 9 Exch. 341, and *Fox* v. *Harding*, 7 Cush. 516, adopt this rule in substance.    In

the present case, it would lead us to the same result that the language of the parties has done. If the plaintiff will remit $ 214.87, being the amount allowed for the three items of special damage, the verdict is to stand; otherwise, it must be set aside, and a                        *New trial granted.*